to dash three zero one eight one Remington Williams at all versus Lamar Davis. me. See, first off, we'll have Mr. Fahrenholt for Lamar Davis. Good morning. Good morning. May it please the court. This appeal involves claims against Colonel Lamar Davis, who is the superintendent of the Louisiana police, and he's named only in his official capacity. So therefore, this appeal is about sovereign immunity. Particularly, this case is about the ex parte young exception to sovereign immunity. The rules are clear that to determine if an ex parte young claim has been stated, the court is supposed to make a straightforward inquiry in determining whether a complaint states an ongoing violation of law, and whether it states a claim for relief to address that. Now, any claim is subject to the pleading standards of Twombly and Iqbal, where there have to be plausible facts asserted. The court is not supposed to just accept if a legal conclusion is made that there is an ongoing violation of law. The court is supposed to actually look at the facts which are pled to determine if there is an ongoing violation of law. Counsel, what elements under ex parte young, what element do you believe is missing that without it, it's fatal to the case? There's actually two. Number one, we don't think that the facts of the complaint state a viable ongoing violation of the law. And number two, for injunctive relief, we don't believe that they're standing for injunctive relief. Any ordinary claim for injunctive relief would be subject to Article III standing rules. Do you mean to say that there's no ongoing violation adequately alleged, and there's no prospective relief being sought? Yes. Okay. I mean, I understand that inquiry overlaps with the standing inquiry, so they start to sound like each other, but go ahead, I just wanna understand what you're saying. I mean, that's one of the first issues. We discuss standing in our appeal. The appellees in their briefs say that standing shouldn't be considered by this court. Jurisdiction is always supposed to be the first thing this court's supposed to consider, and the case law is pretty clear that this court in the past has noted that the issues of ex parte young and standing, they're intertwined. Well, I didn't mean to distract you from answering Judge Englehart's question. You were talking about the prongs of ex parte young that you thought were not met. That is correct. It is those two prongs. The ongoing violation and standing. Yes. I'll address the ongoing violation first. I'll very briefly talk about the facts because I have to. They illustrate how little the state actually has to do with the current case. There was a protest here in New Orleans. There had actually been five days of protests following the death of George Floyd. There's no indication that the Louisiana State Police responded to any of those other protests or had anything to do with those protests. On June 3rd, it's a Friday night at 9 p.m., a group of about 1,000 people walk on to the Pontchartrain Expressway about eight or nine blocks from here, completely blocking the roadway, and they have a stated intention that they're gonna march across the bridge and go to Jefferson Parish. We don't know what they were gonna do there. The fact is they didn't get there because the New Orleans Police Department, not the state police, set up a line, basically a human barricade of police officers to stop them. The protesters did not wish to stop at that line. They wanted to keep going. And the New Orleans Police Department, again, not the state police, responded by using tear gas and other non-lethal munitions against them. The only fact played against the state police in this case is that on information and belief, they were there and that they could've stopped them. There's no information, so it really is only belief. So we have a case where plaintiffs are trying to overcome sovereign immunity based on a belief that the state did or didn't do something. Well, so yeah, I get you, but I mean, we have to accept allegations as true. So what is the alleged ongoing violation, I thought is what you were getting to? The alleged ongoing violation, again, it states to bar the unconstitutional conduct alleged herein from occurring again in the future, which that conduct is that the state police was allegedly on the bridge and failed to intervene to stop the use of force by the New Orleans Police Department. That's the unconstitutional conduct. The reason why we- I don't understand, I guess I don't mean to try to complete your thought for you, but what's the, that sounds like a past violation. So they didn't do something, they should've done it, they didn't do something, so we're gonna sue for damages or whatever. Okay, gotcha. That's a past, what is the, Ex parte Young is about, stop something in the future. Correct, and that's ordinarily cases come before this court on Ex parte Young claims. It's usually that a state statute or a board rule or something similar to that violates federal law, where it's clear in that case, where if I have an Ex parte Young itself, there was a state statute that tried to limit the amount of fees that railroad companies could charge, and it conflicted with federal law. And that was ongoing because the statute was on the books. It could be enforced at any time. This case is based on a single event, which occurred on June 3rd, 2020. Counsel, let me shift you away from the single event a moment, under Ex parte Young. They are also seeking relief for declaratory relief, which is available under Ex parte Young. I understand the argument that this single event, given the nature and the magnitude of it, has chilled their, their interviews and participating, and et cetera, et cetera. It chilled their First Amendment rights or whatever. That's a pleading, as I understand it. Assuming that you're, given your argument here is sound, as to the ongoing events and so forth, that's one component of it, but could you address this question of chilling? Because it's quite clear that, as a matter of law, that it's available. Whether it's here or not is a different question. Sure. And I'm not talking about damages. I'm talking about an injunctive relief, because quite clearly they cover no damages. Correct, and I understand that this court is supposed to accept everything in the light most favorable to the plaintiff. If you look at the events that occurred on January, or excuse me, June 3rd, 2020, the plaintiffs had occupied a federal highway. They had basically brought the highway to a stop. The Louisiana Supreme Court in this court has said that that is a crime. There's so much of this that's based on their contention, that they were simply exercising First Amendment rights, that they were peacefully protesting. It would be a matter of first impression for this court to say that occupying a federal highway is an exercise of First Amendment rights. Is that the nature of the, I'm trying to understand your response to Judge Higginbotham, is that the nature, why is whether they were committing a crime and occupying the highway relevant to the declaratory relief component of what they're asking for? Because if we accept that they're going to do what they did again, that they're going to go protest and stop a federal highway, we argue that Lyons applies because it's a case, it's conjectural that the plaintiffs would ever find themselves in that situation. This isn't, they weren't simply engaged in protesting and that to stop this from happening in the future, they would just be peacefully protesting. Plaintiffs would have to be in a position where they're violating the law, where they're breaching a New Orleans Police Department line or some other local entity that the state police just happens to be there and that the state police doesn't intervene. I understand their argument, it was not, it didn't rest solely on the fact that they're, they were prevented from continuing to demonstrate. It is, they allege and accepted the pleadings that they did so with far excessive force, that they were armed and set ready to go and in they came. Now, I put aside that the people who were enforcing those may have been state officers, not, there may be different forces involved, but that it was excessive force and the brutality and the response and the armed response to it that quote, that's what they allege, that chills their protest objectives. Correct, and it is important, I think to acknowledge it, that the excessive force or the allegedly excessive force was done by the New Orleans Police Department. Yes, I understand. I understand that the state police, again, solely on belief, which is a pretty thin basis to try to overcome something as important as sovereign immunity. I understand what they're alleging. They allege no other instances in which state police at other protests violated anyone's rights. They, they. Not overcoming immunity as such, it is that the relief that they seek doesn't, doesn't prevent the high level constitutional right. That's the concept of, I don't know if that's part of you. Yes, and that's why it's hard for me to separate out the standing requirements from the ex parte young requirements. Well, we have cases that say that they overlap in certain instances. The, the article three standing has a regressibility component to it, obviously. Correct. And then you also turn and look at the, at the, the same, that issue of regressibility, then, of article three is also virtually replicated when you, when you turn, when you turn to apply ex parte young, because the question of ex parte young is whether or not you have the correct official. Correct. And if you don't have the correct official under state, under state law, then you don't have a, you can't proceed under ex parte young period. That ends it. Right. We're not asserting that in this case. And I, I, I'm sorry. I'm sorry. I'm suggesting to you analytically, it's, it's, it's, it's, it's not complicated. It's just that it, it, it, it, you can sort of, it's an overlap. There's the same two types of inquiry here. I'm just asking a small question of, here of, of, under ex parte young, about the chilling effect or not. That may not be enough to persuade the district court. I don't know. But there are other problems with it. But I'm just saying to you that as a pleading allegation, that is sufficient. If it's actually, if it's there. I don't, I don't know what else is in, what else is on the fact of the case. I don't know if that makes sense. There is still the ongoing violation element. Again, I just, I want to point out, this was one incident. There were five days of protests before this. They don't allege that the state police was out there trying to chill their first member rights on any of those days. They don't point to any past protests in which the state police tried to shut it down. They, they do cite to a protest which occurred outside of the governor's mansion. Your argument is they got the wrong official. Yeah. I don't believe, the superintendent of the state police is named in this case. So to the extent they're saying that the state police should be enjoined from doing something, they do have the right official. So we're not, we're not making that argument. I mean, enjoined from what, okay. That's, I don't know, Judge. I don't know the answer to that. They're just enjoined from the unconstitutional conduct, which again, is that maybe they were on the bridge and they didn't stop NOPD from using force. Are there separate lawsuits, to your knowledge, against other actors who were involved in this particular incident? New Orleans police, Jefferson Parish. Yes, they are both. This is an interlocutory appeal only on behalf of the state. Okay. This is a lawsuit continuing in district court against New Orleans police department, against I think around 50 individually named New Orleans police officers and against the Jefferson Parish. So then you, I mean, I assume that's for damages and then you have to get into qualified immunity with respect to issues like that. It's just easier for me to conceive lawsuits against these officers use excessive force. Okay, we do that all the time, right? Unfortunately, I don't know how many we have on this docket, but we do that all the time. I'm aware of that. And so this one is unusual, I think, because I'm not clear on what the relief is being asked for and what's the connection between the Davis and the what actually happened. That's why our position is that New Orleans police department and those police officers who are actually alleged to have used excessive force, those are the real defendants in this case. The state is kind of almost brought in as an afterthought and we believe we should not be here. Okay. Thank you, counsel. You'll have time for rebuttal. Mr. Mann. And you are arguing as a law student, am I correct, Mr. Mann? Yes, sir. I am a third year law student at the University of Georgia School of Law. Showing uncommon courage in appearing before this bench, but we're glad to have you. Thank you, your honor. And may it please the court. My name is Jack Mann and I represent the group of plaintiffs that brought suit against, among others, Colonel Lamar Davis, superintendent of the Louisiana State Police. The superintendent moved to dismiss this suit on grounds of 11th amendment immunity and a lack of standing. The district court denied his motion to dismiss. This court should affirm for two reasons. First, the superintendent is not immune because the plaintiffs have satisfied the ex parte young exception to 11th amendment immunity. And second, this court should not allow the superintendent to bootstrap a review of standing into this narrow interlocutory appeal on 11th amendment immunity. But if this court disagrees, it should affirm the district court and find that the plaintiffs have satisfied the article three requirements for standing. Turning first to immunity, your honors. As to ongoing violations, you just heard from opposing counsel who said the only fact alleged against the LSP was a failure to intervene in this single event. Your honor, the plaintiffs have alleged decades long policies, practices, and customs maintained by the Louisiana State Police that subject people of color and those that advocate for them to unconstitutional treatment. Specifically as to failure to intervene, the plaintiffs have pointed to numerous instances where the LSP failed to intervene when they had an affirmative obligation to do so when they witnessed excessive force. Pointing to, for instance, the Ronald Green case, an incident in which an officer beat a individual 18 times with a flashlight. Okay, I get that. However, we're talking about protests on a bridge and failure to intervene evidently to prevent other officers from other police departments from using excessive force. I understand that. But to say there's a pattern of practice and then say, well, there are these other officers have not intervened when, well, you said the Ronald Green case. I mean, apples and oranges, right? I mean, we got a scenario over here. Okay, maybe there's excessive force, maybe there's not. This bridge thing, right? I mean, I'm just not used to hearing that kind of allegation to prove up a policy. Well, your honor, the plaintiffs have alleged that the incidents on the Crescent City connection were illustrative of the policies, practices. Okay, then can you point to something else that has happened in the past where I would look at it and go, oh yeah, wow, this is a practice. They're not intervening when officers are using tear gas to disperse protesters and they're, yeah, looks like they're not acting. Just point me to something that's analogous. Well, your honor, as to disparate treatment, the LSP treats protests differently depending on the racial makeup of the protesters and the context of the protest. For example? To demonstrate, the plaintiffs alleged that the LSP responded incredibly differently during a 2020 protest at the governor's mansion. That protest related to COVID-19 restrictions, stay at home orders, and not police misconduct or racial injustice. The protest- Did anybody in that instance breach a police barricade line? Your honor, in that instance, protesters flooded the premises of the governor's mansion, an area where the LSP has an affirmative duty to provide security, not only to the property, but to the governor and his family themselves. Is the allegation that the LSP was just not there? No, the LSP was there and they failed to intervene in the sense that they did not prevent protesters from storming the property, did not disperse protesters as they assisted the- Was there excessive force used against protesters in that case? No, there was not, your honor, and they- Okay, so that sort of points out my problem. I understand the allegation here is excessive force being used, tear gas and whatnot against the protesters, LSP should have intervened. Governor's mansion, there's no tear gas, there's no excessive force, again, apples and oranges. That's correct, your honor, that is apples and oranges, but it is worth noting that in an ex parte Young analysis, the court is only obligated to conduct a straightforward inquiry into whether the complaint alleges ongoing violations of the federal law. And in this instance, the plaintiffs have successfully pointed to, as the district court found, numerous instances in the past that demonstrate policies, practices, or customs that violate the federal constitution. And as this court held in Nyugen Biotech versus Paxton, where the plaintiffs alleged First Amendment, Fourth Amendment, and 14th Amendment violations, the plaintiffs here have alleged the same, and this court should find at this time- Yeah, but Nyugen, wasn't that the attorney general of Texas? Yes, it was, your honor. And he had written a letter saying, I'm gonna do something to you. Yes, he wrote an enforcement letter about dietary supplements. So, understandably, I don't think I was on that panel, but understandably, injunction against attorney general of Texas. Okay, I get that. There's kind of a direct connection. Here, it's just, I don't understand. So, I guess, let me ask it this way. Ex parte Young, the whole point of it is state officer is doing something, enforcing a law, enforcing a policy that violates the federal constitution. We're gonna get around state sovereign immunity by saying, enjoin you. Yes, sir. Right? Okay. What would the injunction here say? If you want. The plaintiffs have sought an injunction that includes reform to hiring, supervising, and disciplining the officers. But as we're at the motion dismiss stage, and the policies and practices and customs have not been fleshed out through the discovery process, admittedly, at this moment, hiring, supervision, and discipline is about as specific as it gets. The plaintiffs aren't asking for a simple, obey the law injunction, but they are seeking reform in terms of hiring officers, how they supervise officers, how they instruct officers to use excessive force when it's appropriate, and how they discipline officers who use excessive force incorrectly, as they did in this case. Now, your honor, that's enough to get the plaintiffs over the hump of the ongoing violations requirement. It sounds like you, I mean, frankly, that sounds like a consent decree sort of situation, where DOJ goes to, you know, I don't know, some police department and says, look, we've got this pattern of practice, and we're gonna have a consent decree. These things happen. I'm just not aware, what's your best case that that's the kind of relief properly sought in a lawsuit against a state official that gets you over ex parte, Jan? Well, your honor, as to prospective relief, this court has found in freedom from Religion Foundation versus Abbott, for example, in 2020, that where the plaintiffs sought prospective relief in the form of injunctions and declaratory relief over First Amendment violations, that they got over the ex parte. What was that case about? That case was about a display in the Texas State Capitol around Christmas time, and a group brought suit over the religious elements of it. Again, it's not exactly- They wanted the injunction there, I assume, is take it down. Yes, your honor. And again, it's not factually 100% on point, but what it does is demonstrates how straightforward the inquiry at ex parte is as to whether the relief characterized in the complaint can be described as prospective. Now, your honor, if there are no questions remaining as to ex parte, Jan, I'd like to discuss the bootstrapping issue that we briefed. The standing? Yes, your honor. Sure, go ahead. Your honor, the superintendent did not ask the district court to certify its ruling on standing for interlocutory appeal, and his notice of interlocutory appeal stated only that he would be appealing the district court's 11th Amendment ruling. Your honor, that matters, because as the Supreme Court explained in Swint versus Chambers County Commission, the district court plays a gatekeeping role in that it is the first court to determine whether an issue is appropriate for interlocutory appeal. Standing is not a collateral order subject to interlocutory review, while 11th Amendment immunity is. Collateral orders are appealable through the interlocutory process if they conclusively determine a disputed question, the disputed question is entirely separate from the merits, and the order is effectively unreviewable on appeal from final judgment. Counsel, we have in the past, though, exercised pendant appellate jurisdiction to review questions of standing as part of an ex parte Young analysis, haven't we? Aren't there instances where we've done that? This court has, at times, applied a blanket rule that whenever it has an interlocutory appeal of 11th Amendment immunity, it first has the ability to analyze its jurisdiction over the appeal. However, for instance, in Whole Women's Health versus Jackson, where this court did that, all of the defendants in that case were before the court on the interlocutory appeal. Here, this court should refrain from exercising pendant jurisdiction to reach standing because, as my opposing counsel mentioned, there are numerous defendants still remaining before. What difference would that make, assuming that they would be beneficiaries of a ruling on standing as opposed to a party that would be here to argue it? Your Honor, I agree. If this court finds that the plaintiffs have demonstrated standing, then it would be beneficial to the remaining plaintiffs before the court as to the remaining defendants. And vice versa as well. And vice versa. However, this court should refrain from doing so because the district court found that the plaintiffs at the pleading stage have demonstrated standing. The district court indicated, thus, a willingness to reconsider the standing arguments after the discovery process has been fleshed out. Any adverse determination from this court as to standing related to the superintendent would, thus, inform the district court improperly as to how to rule on standing at a later point in the case. You're saying that the district judge found, at this stage, that they're standing to sue Davis. Yes, Your Honor. Okay. What is the actual or impending injury? Chilled speech, Your Honor. The plaintiffs have alleged that the failure to intervene on the Crescent City connection and the policies, practices, and customs that the LSP has maintained for decades have chilled their willingness to engage in lawful protests in the future. Now, my opposing counsel mentioned misconduct, Your Honor, and he said that the highway protest was a crime and that's relatant to declaratory relief because this case should be controlled by Lyons. Okay. This case, instead, should be controlled by this court's decision in Hernandez versus Kramer, where the court rejected the defendant's attempt to have the court analyze it under Lyons. In Hernandez, this court encountered a plaintiff who alleged that he was subjected to unconstitutional treatment on return from a trip to Mexico, and the district court found that the INS subjected Puerto Rican birth certificates to heightened scrutiny upon reentry. The defendant in that case attempted to raise a Lyons argument because the relief sought and was too speculative, but the Lyons, or the Hernandez court, I'm sorry, focused on three things, Your Honor, that the plaintiff had a right to travel to and from Mexico without his due process rights being violated, that the plaintiff alleged an intent to travel to Mexico again, but feared the repercussions of similar unconstitutional conduct upon reentry, and finally, the district court found that the INS had a policy of subjecting Puerto Rican birth certificates to heightened scrutiny on reentry. The plaintiffs in this case have paralleled those three findings from the Hernandez court. The plaintiffs have a right to protest without being subjected to unconstitutional treatment, and have lawfully, or alleged a lawful intent to protest peacefully and lawfully in the future. They have alleged, additionally, that the LSP maintains policies, practices, and customs that should subject people of color and those that advocate for them to unconstitutional treatment. What is the allegation with respect to the policies of LSP that are related to this case? Your Honor, the policies related to this case are that individuals of color and those that advocate for them in the protest conduct are subjected to disparate and disproportionate treatment as compared to individuals who are not people of color, white individuals protesting in different contexts. Okay, what kind of, I'm trying to imagine, because this would have to be an injunction or a declaration, and what an injunction or a declaration would read with respect to LSP. What would it say? Well, for instance, Your Honor, the plaintiffs pointed to an incident where an LSP officer was not reprimanded for using racial slurs in his official testimony. So, look, this is all very creative, but an injunction with respect to the use of racial slurs has nothing to do with this case. This case, as I understand it, is about a protest on a bridge, not about a workplace, because we got a lot of workplace cases involving racial slurs, and we have to deal with those, and those are very difficult. But this case doesn't have anything to do with that, right? That's true, Your Honor. I merely mentioned it to point to a specific example of what reforming the discipline procedures would look like. The injunction that the plaintiffs have sought. What does that have to do with this case, reforming the discipline procedures? I thought this was about a protest on a bridge. It is, Your Honor, but- So what is reforming the disciplinary procedures of the LSP have to do with this? Because officers who fail to intervene or use excessive force are not disciplined properly by the LSP. And that's exactly why this case should be allowed to proceed at this moment, because discovery needs to take place. It is admittedly hard to believe that the LSP has a policy on the books that says we're okay with racist policing. But the policy- Are you saying that's not plausible? It might be plausible, Your Honor, but having that written on a page is incredibly unlikely. What's more likely is that through the decades of maintaining these policies, practices, and customs, it has become a norm within the LSP to subject people of color to different treatment in this specific context. And that's another reason, again, why discovery is needed. And when you say that LSP is subjecting them to different treatment, do you specifically mean not intervening when others use excessive force, other departments? Both, Your Honor. Both of the LSP uses excessive force. But the LSP is not alleged to have used excessive force. Not in this particular protest, but it goes to the allegations regarding the policies, practices, and customs. They have pointed to past incidents of excessive force against people of color. They pointed to past incidents of failure to intervene when other officers engage in excessive force against people of color. And they have alleged that this culminated with a failure to intervene on the Crescent City Connector. And that the policies, practices, and customs, in addition to this specific instance of failure to intervene, has chilled their speech. Why isn't your remedy limited to ordering the Louisiana State Police to exercise some type of supervisory or management over other police departments in the state, including local city departments or parish sheriff's offices? I believe that would be part of the relief. You say it's a part, but what in the complaint suggests that, it sounds like you're kind of getting the camel's nose in the tent of operating the Louisiana State Police Department when, as Judge Duncan said, we have an incident on the bridge and the allegation is excessive force was used and the state police observed it and failed to act. That's what I got out of the complaint. To throw in all of these other parade of instances of improper conduct by state police officers doesn't seem to help when the complaint is the state police need to act to prevent other police departments from using excessive force. You understand my point? Why are we talking about these other instances when the gravamen of the complaint is the state police observed it and didn't prevent it? Because it's still important to look to the past conduct of the state police and understand that why they failed to intervene at this specific protest is because of a decades long policies, practices and customs at the LSP. Specifically mandating that they perform a supervisory role over other law enforcement agencies simply would not go far enough to remedy the plaintiffs for their chilled speech. The LSP has demonstrated for decades that it treats individuals of color differently because of their race and because of the context that they are protesting. It's simply not enough to say exercise a supervisory role and that is why the plaintiffs have sought declaratory relief in the form of a declaration that the policies, practices and customs maintained by the LSP are unconstitutional. Now they're not seeking damages from a declaration of past harm and so that relief is still perspective for the ex parte young analysis. But your honor. You're not seeking damages because you can't, right? Yes. You can seek damages against local officials if you can overcome qualified immunity. That is correct. What is your response to Appellant's argument that this was not a, I mean this was an illegal occupation of a highway? Your honor, the appellant is entirely correct that protesting on an elevated roadway such as this is unlawful in New Orleans. However, the plaintiffs protested peacefully and lawfully for five days prior and in the night before this incident in question. They did so illegally? Legally. Legally or illegally? Legally. Legally. So this protest is illegal as you've just conceded. I wouldn't, I would say that protesting on an elevated roadway is in violation of the particular New Orleans laws about people on those roadways. So yes, your honor. Illegal. So why do you have a First Amendment right to illegally occupy a highway? Your honor, what is at issue as to plaintiff's standing is not a First Amendment right to illegally occupy a highway but an alleged intent to lawfully protest in the future. And that's what distinguishes this case from Lyons as we were talking about earlier. In Lyons, the court would have to speculate that the plaintiffs would again engage in misconduct, would again run into the police, and would again be subjected to an unconstitutional choke hold. Here it's much less speculative to assume that the plaintiffs will lawfully protest in the future as they had for five nights leading up to the events in question. And so I believe that the misconduct element goes to the standing argument, your honor. However, I'd like to take a moment to just step back and address that this court should not review the standing order in this decision. Now, while Judge Engelhardt pointed out that this court has sometimes issued a blanket statement that whenever it has an interlocutory appeal allotment and immunity, it can first review the underlying subject matter jurisdiction, this court has never explicitly stated that when it has an 11th Amendment immunity ruling before it, it has pendant jurisdiction to review standing. Now, the 11th Circuit has explicitly addressed this issue. And I'd like to point the court's attention to two cases we mentioned in our brief. First, Summit Medical Association versus Pryor. In that case, the 11th Circuit explained that neither of the SWINT exceptions applied when discussing 11th Amendment immunity and standing, those exceptions being the issues were not inextricably intertwined, and standing was not necessary to ensure meaningful review of the 11th Amendment immunity decision. And thus, though it may have been convenient to reach standing in 11th Amendment immunity appeal, it was not necessary. What would you say to Judge Higginbotham's point that there is a certain overlap between the ex parte young and the Article III standing specifically on redressability? And doesn't that, I mean, we don't need to have a rule that says, oh, we can always reach standing. Here in this particular case, there is an overlap between those two elements. Your Honor, those two elements do overlap. And as this court explained in Escobar versus Monte, it may exercise pendant appellate jurisdiction where the underlying facts and elements are precisely similar. But the Escobar versus Monte court nevertheless cautioned that it is only proper to exercise pendant appellate jurisdiction where review of the pendant claim is necessary to ensure meaningful review of the properly appealed claim. OK, why is that the case here? Because this court can address the ex parte young question, the straightforward question as to whether the plaintiffs have alleged ongoing violations of federal law and prospective relief without reaching the standing decision. I see my time is up. Thank you very much. Thank you, counsel. We appreciate it. And you've done a good job. Thank you. Mr. Farenthold, rebuttal. I have a very brief rebuttal. It was mentioned a few times during opposing counsel's argument that there need to be additional facts fleshed out discovery in order to determine what the claims are against Colonel Davis. Less than a month ago, Judge Duncan, you issued an opinion in Inouye-Paxson, which made it clear that sovereign immunity as a defense is supposed to be ruled on at the motion to dismiss stage. There should be no discovery to answer this question. The plaintiffs need to come in to court when they file the complaint with sufficient information to know if they have a claim or not. That's my first comment. Second, again, What do you want us to do? I would like you to reverse the district court and dismiss us from this lawsuit. It is a matter of low hanging fruit, which I technically didn't address earlier. But it was brought up that there are damages claims under section 1983 in state law in this case. There are also state law claims, right? I think those should very obviously be dismissed. I think the district court passed it. I think the other side has conceded it. And we would ask that the district court be reversed. Find that the plaintiffs have not stated a claim for injunctive relief under Ex Parte Young. They have not properly alleged an ongoing violation of law. And they have not alleged any prospective relief, which would satisfy Article III standing requirements. There is declaratory relief. I think there are three declaratory judgments they've requested. And it's all that the state police violated the law on June 3. Those are all clearly past facing forms of relief. I don't know what an injunction would look like. That's been my struggle this whole time. And I mean, that's where we can leave it. Well, I guess we'll have to give it some thought, won't we? Any more questions? OK, thank you, counsel, for a well-argued case on both sides. And we will take the matter under advisement. That ends our oral arguments for today. And the court will stand in recess until tomorrow morning at 9 o'clock AM. Thank you.